BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
KASSANDRA MCGRADY, IDAHO STATE BAR NO. 8455
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK ABBOTT SWEENEY,<br><br>Defendant. | Case No. 1:19-cr-00089-EJL<br><br>**RULE 11 PLEA AGREEMENT** |

Rev. May 2019

I.     **GUILTY PLEA**

   A.     **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the Defendant, the attorney for the Defendant, and the Government[1] agree that the Defendant will plead guilty to Counts One, Two, Three, Four, Five, and Six of the Indictment, which each charge the Defendant with Stalking, in violation of 18 U.S.C. § 2261A(2)(A) & (B).

   This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this agreement. Upon acceptance of the Defendant's guilty pleas, and the Defendant's full compliance with the other terms of this agreement, the Government, will agree, under Federal Rule of Criminal Procedure 11(c)(1)(A), that it will not file additional charges resulting from the investigation of the Defendant, and under Federal Rules of Criminal Procedure 11(c)(1)(B), will recommend a sentence within the guideline range.

   A.     **Oath.** The Defendant will be placed under oath at the plea hearing. The Government may use any statement that the Defendant makes under oath against the Defendant in a prosecution for perjury or false statement.

II.    **WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL**

   The Defendant waives the following rights by pleading guilty pursuant to this agreement: 1) the right to plead not guilty to the offenses charged against the Defendant and to persist in that plea; 2) the right to a trial by jury, at which the Defendant would be presumed innocent and the burden would be on the Government to prove the Defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the Defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence

---

[1] The word "Government" in this agreement refers to the United States Attorney for the District of Idaho.

**Plea Agreement**                                     1                                     Rev. May 2019

without having that held against the Defendant. If the Court accepts the Defendant's guilty plea, there will be no trial.

## III. NATURE OF THE CHARGES

    A.    **Elements of the Crime.** The elements of the crime of Stalking, 18 U.S.C. § 2261A(2)(A) & (B), as charged in counts One, Two, Three, Four, Five, and Six, are as follows:

    1.    The Defendant, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person;

    2.    Used the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce, to engage in a course of conduct that:

        a. Placed that person in reasonable fear of death or serious bodily injury to that person, an immediate family member, or a spouse or intimate partner, or

        b. Caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to that person, an immediate family member, or a spouse or intimate partner.

According to 18 U.S.C. § 2266, "course of conduct" means a pattern of conduct composed of two or more acts, evidencing a continuity of purpose.

According to 18 U.S.C. § 1365(h)(3), "serious bodily injury" means bodily injury that involves a substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

According to 18 U.S.C. § 115(c)(2) "immediate family member" means the individual's spouse, parent, brother or sister, child, person to whom the individual stands in loco parentis, or any other person living in the individual's household and related to the individual by blood or marriage.

**B.** **Factual Basis.** The Defendant admits the following facts are true:

In December of 2015, the Defendant and E.R. got into an altercation over a parking spot at the post office in Garden City. E.R. and the Defendant did not know each other prior to the altercation. Following the altercation, the Defendant began mailing harassing and unwanted postcards to E.R., her husband, S.R., and their two adult daughters, K.R. and L.R. The Defendant mailed postcards to E.R.'s home in Boise where she lived with S.R. and K.R. The Defendant also mailed postcards to S.R.'s place of employment in Boise and L.R.'s place of employment in Oregon. The postcards were prepaid postcards that were typed using a manual typewriter. The Defendant referenced the altercation at the post office several times and stated he was waiting for E.R. to return to the post office.

The postcards contained strong racial epithets, insults to the family members, and derogatory language. The Defendant made several statements in the postcards intended to harass and intimidate the family including referring to K.R. as a whore and an alcoholic, referring to L.R. as a prostitute and a mongrel, referring to E.R. as a dwarf and a slut, referring to S.R. as a pedophile, threatening to get L.R. in trouble with the DEA, threatening to contact the IRS to have K.R. investigated for tax fraud, informing the family that their personal information had been turned over to criminals, and informing E.R. and K.R. that he had conducted surveillance on them.

The Defendant also sent postcards to inmates around the country purporting to be from E.R. and K.R. and requesting return correspondence. In response, E.R. and K.R. received numerous letters and correspondence from various notorious serial killers and criminals around the country. The Defendant sent a postcard to the Idaho Black History Museum purporting to be from E.R. The postcard contained disturbing racial slurs. The Defendant sent postcards to

neighbors of the family purporting to be from the Sex Offender Registry. The postcards contained false allegations that S.R. was a convicted sex offender. S.R. passed away on January 31, 2016. The Defendant sent a postcard accusing K.R. of being responsible for her father's early death.

In several postcards, the Defendant listed E.R.'s true social security number and date of birth. The Defendant also referenced the true birthdates of other family members as well as a description of their vehicles, including license plate numbers. At one point, the family moved to a new address in Boise, but the Defendant obtained their new address and continued sending postcards. The Defendant continued to send the family unwanted mailings until December of 2018. The unwanted mailings caused E.R., S.R., K.R., and L.R. to suffer substantial emotional distress and to fear that they, or their immediate family members, would suffer great bodily injury.

In October of 2018, husband and wife, L.J. and D.J., began receiving similar harassing, typewritten, postcards from the Defendant. L.J. and D.J. began receiving the postcards shortly after they were in an altercation with the Defendant over the drive-through window at the Wells Fargo in Garden City. The Defendant did not know L.J. and D.J. prior to the altercation. In some of the postcards, the Defendant mentioned the altercation at the bank.

The Defendant engaged in several acts intended to harass and intimidate L.J. and D.J. The Defendant mailed a postcard to L.J. and D.J.'s neighbor falsely accusing L.J. of being a convicted sex offender. The Defendant send a postcard to D.J.'s place of employment accusing L.J. of being a sex offender. The Defendant sent two postcards purporting to be from the Sex Offender Registry to Boise schools falsely accusing L.J. of being a sex offender and lurking on school grounds.

The Defendant also sent postcards to L.J and D.J. at their home address. In one of the postcards, the Defendant referenced L.J.'s true date of birth and description of his vehicle,

including his license plate number. In other postcards, the Defendant stated that he had disseminated L.J. and D.J.'s personal information to others including convicted criminals. The Defendant also mailed postcards to inmates around the country purporting to be from L.J. and D.J. and requesting return correspondence. In response, L.J. and D.J. received several letters from various inmates around the country. L.J. and D.J. received harassing and unwanted mailings until February of 2019. The unwanted mailings caused L.J. and D.J. to suffer substantial emotional distress and to fear that they, or their immediate family members, would suffer great bodily injury.

Through video surveillance from the Wells Fargo, law enforcement was able to identify the Defendant as the person responsible for sending the harassing postcards to L.J. and D.J. Because of the similarities in the mailings, the Defendant was identified as the person responsible for sending the harassing mailings to E.R. and her family. L.J., D.J., and E.R. subsequently identified the Defendant as the perpetrator in a photo line-up.

On March 4, 2019, the United States Postal Inspection Service executed a search warrant at the Defendant's residence where they seized a typewriter. On that same date, the Defendant was interviewed. The Defendant waived his *Miranda* rights and agreed to speak with law enforcement. During the interview, the Defendant admitted to being the person responsible for sending the postcards to the victims. The Defendant recounted the original disputes with E.R., L.J., and D.J. and stated he started sending the postcards as a form of retaliation. The Defendant said he felt the victims had embarrassed him and it made him feel better to send the postcards knowing the content would upset them. He admitted to looking up their personal information on-line using his personal computer as well as hiring a private investigator to obtain their personal identifiers and addresses. The Defendant further admitted to typing the postcards using the

typewriter that was seized from his home during the execution of the search warrant and to mailing the postcards at various locations within the District of Idaho.

The Defendant acknowledges that he mailed the postcards with the intent to harass or intimidate, or place under surveillance with intent to harass or intimidate, E.R., S.R., K.R., L.R. L.J., and D.J. The Defendant further acknowledges that he used the mail, a facility of interstate commerce, to engage in a course of conduct that placed E.R., S.R., K.R., L.R., L.J., and D.J. in reasonable fear of death or serious bodily injury to themselves or an immediate family member and that caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to E.R., S.R., K.R., L.R., L.J., and D.J. or an immediate family member. The Defendant agrees he engaged in two or more acts pertaining to each victim that evidenced a continuity of purpose to harass or intimidate them.

## IV. SENTENCING FACTORS

**B.** **Penalties.** The crime of Stalking, 18 U.S.C § 2261A(2)(A) & (B), as charged in counts One, Two, Three, Four, Five, and Six, is punishable per count by:

1. a term of imprisonment of up to five years;
2. a term of supervised release of not more than three years;
3. a maximum fine of $250,000, and a special assessment of $100.

**A.** **Supervised Release.** The Court may impose a period of supervised release. No agreement exists as to its length.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crimes to which the Defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and prosecution.

B. **Fines and Costs.** The Court may impose a fine. No agreement exists as to its amount of the fine. The Court may also order the Defendant to pay the costs of imprisonment, probation, and supervised release.

C. **Special Assessment.** The Defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing. Payment will be made to:

> The United States District Court, Clerk's Office
> Federal Building and United States Courthouse
> 550 West Fort Street, Fourth Floor
> Boise, Idaho 83724

D. **Restitution.** In addition to paying any forfeiture, fine, and costs imposed, the Defendant also agrees to pay restitution equal to the full amount of loss caused to any victim. Specifically, the Defendant agrees to pay restitution equal to the full amount of loss caused to E.R., S.R., K.R., L.R., L.J, and D.J. The Defendant agrees that all monetary penalties imposed by the Court, including restitution, will be due immediately and can immediately be enforced by the Government (whether through 18 U.S.C. § 3613 or otherwise). The Defendant agrees that the payment schedule or plan is neither the only method, nor a limitation on the methods, available for enforcing the judgment. It is simply a schedule or plan for minimum payments. The Defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor the Court can consider if the Defendant has accepted responsibility under U.S.S.G. § 3E1.1.

V. **SEIZED PROPERTY: ABANDONMENT AND WAIVER**

The Defendant abandons, releases, and waives any interest in property seized or otherwise obtained by the Government or law enforcement in this case unless specific exceptions are noted in this agreement. Such property will be disposed of, destroyed, sold, or transferred in the Government's sole discretion. Such disposition shall not constitute satisfaction of any assessment, fine, restitution, forfeiture, cost of imprisonment, or any other penalty that this Court may impose.

## VI.  UNITED STATES SENTENCING GUIDELINES

A.  **Application of Sentencing Guidelines.**  The Court must consider the U.S.S.G. in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to U.S.S.G. § 1B1.3.

The Court is not a party to this agreement and the agreement does not bind the Court's determination of the U.S.S.G. range. The Court will identify the factors that will determine the sentencing range under the U.S.S.G. The Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that this agreement does not bind the Court, the parties agree to the recommendations and requests set forth below.

B.  **Sentencing Guidelines Recommendations and Requests.**

1.  **Government's Statements at Sentencing.** The Government reserves the right to allocute fully at sentencing regarding any sentencing recommendation. The Government may rely on or submit any information, including relevant conduct, in support of its recommendation regardless of whether the agreement or the pre-sentence investigation report contain this information. Any exception must be specified in this agreement.

2.  **Acceptance of Responsibility.** If the Defendant clearly accepts responsibility for the offense, the Defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under U.S.S.G. § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the Defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the Defendant has timely notified authorities of the Defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. If, before sentence is imposed, the

Defendant fails to meet U.S.S.G. § 3E1.1's criteria, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or decline to make the motion.

        3.        **Downward Departure or Variance Request by Defendant.** If the Defendant wishes to seek a departure or variance, the Defendant must provide written notice to the Government, along with the reasons and basis therefore, 21 days before the date set for sentencing.

## VII. WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

        A.        **Waiver:** In exchange for this agreement, and except as provided in subparagraph B, the Defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution. This waiver includes any challenge to the constitutionality of any statute of conviction including arguments that the admitted conduct does not fall within any statute of conviction.

The Defendant acknowledges that this waiver will result in the dismissal of any direct appeal or collateral attack the Defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this agreement and allow the Government to withdraw from it, as well as to take other remedial action.

If the Defendant believes the Government has not fulfilled its obligations under this agreement, the Defendant will object at the time of sentencing; further objections are waived.

        C.        **Exceptions:**

        1.        **Direct Appeal:** Notwithstanding subparagraph A, the Defendant may file one direct appeal if one of the following unusual circumstances occurs:

        a.        the sentence imposed by the Court exceeds the statutory maximum;

    b.    the Court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

    c.    the Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the Court.

The Defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

    2.    **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the Defendant may file an ineffective assistance of counsel claim in a 28 U.S.C. § 2255 motion.

## VIII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The Defendant agrees to provide financial information and any other information requested by a representative of the United States probation office for use in preparing a pre-sentence investigation report, and agrees that the United States probation office may share all financial information with the Government. Failure to execute releases or to provide information for the pre-sentence investigation report violates this agreement and relieves the Government of its obligations from it. Such failure by the Defendant and response by the Government will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests. Providing materially false information will subject the Defendant to additional penalties, including an enhancement under U.S.S.G. § 3C1.1.

## IX. DISCLOSING FINANCIAL INFORMATION

The Defendant agrees to disclose all the Defendant's assets and sources of income to the Government, including all assets over which the Defendant exercises or exercised direct or indirect control, or in which the Defendant has had any financial interest. This includes all community property. The Defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the Government. The Defendant agrees truthfully to complete a personal financial statement within 14 days from the date the Defendant signs this

agreement or from the date the financial statement is provided to the Defendant or counsel, whichever is later. The Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within 7 days of the event giving rise to the changed circumstances. The failure timely and accurately to complete, sign, and update the financial statements may constitute failure to accept responsibility under U.S.S.G. § 3E1.1, as well as other things.

The Defendant authorizes the Government: (a) to obtain a credit report on the Defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain all financial records related to the Defendant.

Before sentencing, Defendant agrees not to dissipate any assets without the consent of both the Government's financial litigation unit and asset forfeiture unit. If any assets are sold, any sale proceeds will be deposited with the Clerk of Court and, upon sentencing, paid toward any monetary penalties ordered in the judgment.

## X.     NO RIGHT TO WITHDRAW PLEA

The Defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The Defendant cannot withdraw from this agreement or the guilty plea, regardless of the Court's actions.

## XI.    CONSEQUENCES OF VIOLATING AGREEMENT

**A.     Government's Options.** If the Defendant fails to keep any promise in this agreement or commits a new crime, the Government is relieved of any obligation: 1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to prosecute the Defendant on other charges, including charges not pursued due to this agreement. Such charges may be brought without prior notice. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from this agreement in its entirety. In

addition, if the Government determines after sentence is imposed that the Defendant's breach of the agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this agreement stand or vacating such conviction(s) so that charge(s) may be re-prosecuted.

The Government's election to pursue any of the above options provides no basis for the Defendant to withdraw the guilty plea(s) made pursuant to this agreement.

    B.    **Defendant's Waiver of Rights.** If the Defendant fails to keep any promise made in this agreement, the Defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the Defendant entered a plea of guilty or which were dismissed under this agreement. In addition, for any charge that is brought as a result of the Defendant's failure to keep this agreement, the Defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the Defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare. The Defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

**XII.  MISCELLANEOUS**

    A.    **No Other Terms.** This agreement is the complete understanding between the parties, and no other promises have been made by the Government to the Defendant or to the attorney for the Defendant. This agreement does not prevent any Governmental agency from pursuing civil or administrative actions against the Defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does

not bind or obligate Governmental entities other than that specified as the Government in this agreement (i.e., the United States Attorney's Office for the District of Idaho).

**B.** **Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the Defendant's notification of acceptance of this agreement no later than 5:00 p.m. on July 8th.

## XIII. UNITED STATES' APPROVAL

I have reviewed this matter and the agreement. This agreement constitutes a formal plea offer from the Government. Any oral discussions with the Defendant and defense counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the Government and is rescinded. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

_____        7.23.19
KASSANDRA MCGRADY                         Date
Assistant United States Attorney

## XIV. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this agreement with my attorney. I understand the agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case. I understand that this agreement is a formal plea offer from the Government. Any oral discussions between the Government and me or my counsel about a plea do not constitute a plea offer. Any

written offer or agreement made before this agreement is no longer valid and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including entering a guilty plea. I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States. I am satisfied with my attorney's advice and representation in this case.

_____       July 18, 2019
Frank Abbott Sweeney                                     Date
Defendant

I have read this agreement and have discussed the contents of the agreement with my client. This document accurately sets forth the entirety of the agreement. I have conveyed all written offers from the Government to the Defendant pursuant to Missouri v. Frye, 132 S. Ct. 1399, 1408-09 (2012). I understand that this agreement is a formal plea offer from the Government. Any oral discussions between the Government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer valid and is rescinded. I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually certain that my client will be removed from the United States. I concur in my client's decision to plead guilty as set forth above.

_____       July 18, 2019
ELISA MASSOTH                                          Date
Attorney for the Defendant