UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>FRANK ABBOTT SWEENEY,<br><br>    Defendant. | Case No. 1:19-cr-00089-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Frank Sweeney's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 43. The Government has filed an opposition to Sweeney's Motion. Dkt. 48. Sweeney filed a reply soon after. Dkt. 49. The matter is ripe for the Court's consideration.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

The offense conduct in this case occurred over an approximately three-year period in which Sweeney stalked and harassed several victims and their families after brief

altercations with the victims at the post office and a local bank. Dkt. 34, at 4–7. Sweeney harassed his victims by sending disturbing and unwanted postcards to their homes and workplaces. *Id.* The content of Sweeney's postcards included references to surveilling the families' homes, strong racial epithets, insults to the family members, and derogatory language.[1] *Id.* Sweeney sent postcards to the victims' neighbors purporting to be from the Sex Offender Registry, to Boise schools purporting to be from the Sex Offender Registry, and to various convicted murderers and rapists purporting to be his victims soliciting communications. *Id.*

When law enforcement interviewed Sweeney, he admitted to sending the postcards. Sweeney pled guilty to six counts of stalking in violation of 18 U.S.C. § 2261A(2)(A), and on December 16, 2019, the Court sentenced Sweeney to 51 months of imprisonment followed by three years of supervised release. Dkt. 40, at 2. Sweeney is serving his sentence at Marianna Federal Correctional Institution ("FCI Marianna,") with an anticipated release date of December 9, 2022. Sweeney has been approved to transition to a halfway-house on June 13, 2022. Dkt. 43-1.

On June 7, 2021, Sweeney filed the instant Motion for Compassionate Release. Dkt. 43. As required, Sweeney first petitioned the Warden at FCI Marianna for release. Dkt. 43-

---

[1] The Court acknowledges the argument in Sweeney's reply that "none of [his] postcards threatened harm or violence." Dkt. 49, at 2. However, the Court also notes that the Presentence Investigation Report, which Sweeny agreed was accurate, says that Sweeney "made several statements in the postcards intended to harass and intimidate the family including . . . threatening to get L.R. in trouble with the DEA, threatening to contact the IRS to have K.R. investigated for tax fraud, informing the family that their personal information had been turned over to criminals, and informing E.R. and K.R. that he had conducted surveillance on them." Dkt. 34.

MEMORANDUM DECISION AND ORDER - 2

1. That request was denied on May, 7, 2021. *Id.* Sweeney bases his request on his age, the risk of being exposed to COVID-19, and several underlying health conditions, including cardiovascular disease and a sinus infection. *Id.* Sweeney has already contracted, and recovered from, COVID-19. Dkt. 48-1, at 5. Additionally, Sweeney has received the first dose of the Pfizer COVID-19 vaccine, but refused the second dose. *Id.*

### III. LEGAL STANDARD

Sweeney seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[2] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[3] *Id*. If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id*.; *United States v. Rodriguez*, 424 F.

---

[2] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[3] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Sweeney submitted a request for Compassionate Release with the Warden on May 2, 2021, and his request was denied on May, 7, 2021. Dkt. 43-1. Because Sweeney filed his present Motion after his request to the Warden was denied, the Court finds that he has exhausted his administrative remedies.

### B. Extraordinary and Compelling Reasons

Having determined that Sweeney has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Sweeney bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

MEMORANDUM DECISION AND ORDER - 4

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. As such, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

Nonetheless, Sweeney's motion suggests that one of the specific scenarios set out

in U.S.S.G. § 1B1.13 applies in this case. He argues that the threat of contracting COVID-19, in conjunction with an elevated risk of severe illness due to his age, cardiovascular disease, and a severe sinus infection, constitutes an extraordinary and compelling circumstance necessitating compassionate release under the "medical condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[4] Dkt. 43. Sweeney's BOP medical records indicate that he has hypothyroidism, hyperlipidemia, age-related cataract, hypertension, chronic ischemic heart disease, hypotension, acute sinusitis, constipation, and cervicalgia. Dkt. 48-1, at 5.

As an initial matter, the Court notes that Sweeney's age and some of his medical conditions likely do place him at a higher risk of contracting a severe form of COVID-19. The CDC lists various heart and coronary conditions as underlying health conditions that

---

[4] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

    (A)    Medical Condition of the Defendant.—

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

    (I)    suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

MEMORANDUM DECISION AND ORDER - 6

can place individuals at an increased risk of severe illness from COVID-19.[5] However, the Government argues, and the Court agrees, that Sweeney's refusal to be fully vaccinated weighs heavily against a finding of extraordinary and compelling circumstances.[6]

The Government points out that many courts have found that prisoners who refuse COVID-19 vaccinations cannot present extraordinary and compelling circumstances, even in the presence of underlying health conditions. *See United States v. Jackson,* 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021) (noting that a prisoner suffering from obesity, type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol did not present extraordinary and compelling circumstances because there was "no apparent medical reason" that the prisoner declined the vaccine); *United States v. Austin*, 2021 WL 1137987, *2 (E.D. Mich. Mar. 25, 2021) (holding that "[a] prisoner cannot on the one hand point to the risk of severe illness, while on the other hand refuse to participate in basic precautionary measures such as vaccination"). The Court agrees with this reasoning. It makes little sense for a prisoner to argue that he must be released because of the risk posed by COVID-19 while at the same time refusing to complete a readily available vaccine treatment that mitigates that risk almost entirely. Indeed, doing so would likely encourage prisoners to

---

[5] *CDC Updates, People with Certain Medical Conditions,* (Updated May 13, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[6] Sweeney claims that he refused the second dose of the Pfizer vaccine because the first dose made him sick and because the media reported that some vaccines can cause blood clots. Dkt. 49, at 1. It is up to Sweeney whether or not to receive his second does; however, the Court would note that CDC guidance indicates that blood clotting has only been observed as a rare side effect of the Johnson and Johnson vaccine, and even for that vaccine, the risk is extremely low, particularly for men of all ages. https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html. The CDC also notes that "[t]here are other COVID-19 vaccines available for which this risk has not been seen." *Id*.

MEMORANDUM DECISION AND ORDER - 7

remain unvaccinated.

Additionally, there is no evidence to suggest that Sweeney would be at lower risk to contract the virus if he were released. Multiple courts have denied compassionate release to prisoners, even those with high-risk medical conditions, because many of them would likely be less-exposed to the pandemic by remaining at the prison. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population: MDC has no current reported infections, inmates at MDC are housed in separate units, and the staff at MDC has undertaken a variety of interventions [] to prevent the virus from reaching and spreading within the prison"); *United States v. Hembry*, 2020 WL 1821930, at *2 (N.D. Cal. Apr. 10, 2020) (denying motion for inmate with diabetes based on COVID-19 risks where, *inter alia*, the incarcerated movant was "housed at a facility with no reported infections"). Indeed, as of August 5, 2021, FCI Marianna is reporting zero active cases among inmates and only three active case among staff.[7] Although he has not specifically indicated where he would reside upon release, presumably Sweeney would return to his previous address in Ada County. As of August 5, 2021, Ada County has had roughly 56,000 cases and nearly 500 deaths

---

[7] Federal Bureau of Prisons, COVID-19 Information, available at https://www.bop.gov/coronavirus/ (last accessed August 5, 2021).

due to COVID-19.[8]

The Government also argues that the 18 U.S.C. § 3553(a) factors weigh against Sweeney's release.[9] Dkt. 48, at 12-13. The Court agrees. Sweeney has failed to demonstrate how release, after having served about half of a sentence for a serious stalking crime, reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. As outlined by the Presentence Investigation Report, Sweeney stalked and harassed multiple victims for an extended period of time. Dkt. 34, at 4–7. There is no indication that he intended to stop his illegal behavior had he not been caught. Moreover, he has a lengthy criminal history that spans five decades. *Id.* at 11–14. While largely dated, that history includes violent and nonviolent offenses and both state and federal felonies. *Id.* And despite multiple, lengthy, prison sentences, Sweeney has

---

[8] Idaho Division of Public Health, COVID-19 Dashboard. Available at https://public.tableau.com/app/profile/idaho.division.of.public.health/viz/DPHIdahoCOVID-19Dashboard/Home (last updated August 5, 2021).

[9] Factors To Be Considered in Imposing a Sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]

    (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

MEMORANDUM DECISION AND ORDER - 9

continued to recidivate. The Court agrees with the Government's argument that the public is currently best protected by Sweeney's continued incarceration. As such, all four factors set forth in U.S.C. § 3553(a)(2) weigh against releasing Sweeney early.

In sum, the Court finds that Sweeney has exhausted his administrative remedies. However, he has failed to demonstrate an "extraordinary and compelling reason" for his release, and has failed to show that such a reduction in his sentence is consistent with the goals of the 18 U.S.C. § 3553(a) sentencing factors. Weighing all relevant factors, the Court cannot depart from its prior sentence and release Sweeney at this time. Accordingly, the Court must DENY Sweeney's motion.

## V. ORDER

The Court HEREBY ORDERS:

1. Sweeney's Motion for Compassionate Release (Dkt. 43) is DENIED.

DATED: August 24, 2021

David C. Nye
Chief U.S. District Court Judge